**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROY CHAMBERS, JR., Plaintiff, v. TRINITY HEALTH OF NEW ENGLAND, Defendant. | Civil No. 3:25-cv-01275 (AWT) |

**RULING ON MOTION TO DISMISS**

Plaintiff Roy Chambers Jr., proceeding pro se, filed his original complaint on August 11, 2025. The original complaint was dismissed on September 17, 2025, with leave to amend. On January 20, 2026, the plaintiff filed the Amended Complaint (ECF No. 13). The Amended Complaint names Trinity Health of New England and others as defendants, but no other defendant has been served. There are six counts in the Amended Complaint, as follows: Count I, a claim for violation of Title III of Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Count II, a claim for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Count III, a substantive due process claim brought pursuant to 42 U.S.C. § 1983; Count IV, a claim for false imprisonment; Count V, a claim for

intentional infliction of emotional distress; and Count VI, a claim for breach of contract.

Defendant Trinity Health of New England ("Trinity Health") has filed a motion to dismiss. For the reasons set forth below, Trinity Health's motion to dismiss is being granted.

## I. FACTUAL ALLEGATIONS AND BACKGROUND

We take the non-moving party's factual allegations as true for the purposes of a motion to dismiss. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

"On or about April 24, 2024, Plaintiff was involuntarily admitted to [Trinity Health's] psychiatric inpatient facility pursuant to Connecticut mental health commitment statutes." Amended Compl. ¶ 3.[1] "While confined, [Trinity Health] provided inpatient psychiatric services including: a. individual counseling, b. group therapy, c. meals, d. showers, e. recreation, f. sleeping facilities, and g. grievance procedures." Id. ¶ 4.

"Plaintiff has permanent physical disabilities affecting mobility, balance, and spinal stability, substantially limiting major life activities including walking, standing, bathing, transferring, and safely ambulating." Id. ¶ 1. "Plaintiff's disabilities require medically prescribed mobility aids and

[1] The paragraph numbers used in the court's citations refer to the paragraph numbers beginning under the heading "III. Factual Allegations" on page 2 of the Amended Complaint.

safety equipment, including: a. a rollator or wheelchair, b. orthopedic footwear, and c. a spinal brace." Id. ¶ 2.

"[Trinity Health] maintained categorical policies and practices, not based on individual medical or safety assessments, that prohibited: a. patients from wearing personal orthopedic footwear; b. patients from possessing or using prescribed wheelchairs or rollators; and c. patients from retaining prescribed spinal braces within the psychiatric unit." Id. ¶ 5. "Because of these policies, [Trinity Health] denied Plaintiff access to his prescribed mobility aids and safety equipment and instead provided only a small, non-prescribed walker and hospital socks." Id. ¶ 6.

"[Trinity Health] contacted Plaintiff's father to inquire whether Plaintiff required his wheelchair or rollator, orthopedic footwear, and spinal brace to ambulate. Plaintiff's father confirmed that Plaintiff required those prescribed devices for safe mobility." Id. ¶ 7. "Despite this confirmation, [Trinity Health] continued to deny Plaintiff his prescribed accommodations and did not modify their policies." Id. ¶ 8.

"Plaintiff repeatedly informed [Trinity Health] that without his prescribed accommodations he could not safely access showers, meals, group therapy, counseling, sleeping facilities, or recreation without pain, injury, and risk of falling." Id. ¶ 9. "Plaintiff formally and informally requested reasonable

accommodations, including use of his prescribed rollator or wheelchair, orthopedic footwear, and spinal brace." Id. ¶ 10. "[Trinity Health] denied these requests and failed to engage in any interactive process to identify reasonable modifications." Id. ¶ 11. "As a direct result, Plaintiff suffered multiple falls, worsening spinal and foot injuries, severe and persistent pain, a large painful hernia and pelvic region pain, and additional physical complications." Id. ¶ 12.

The plaintiff claims:

> Plaintiff was effectively denied meaningful access to [Trinity Health's] services, while non-disabled patients were able to access the same services safely. Plaintiff requested discharge after [Trinity Health] demonstrated and admitted that they could not provide a safe, ADA-compliant environment accommodating his medical needs. Despite knowledge of ongoing injury and risk, [Trinity Health] continued to confine Plaintiff for approximately nine days.

Id. ¶ 13-15.

## II. LEGAL STANDARD

The defendant moves to dismiss the plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Def. Mot. to Dismiss, ECF No. 34 at 1. "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova

v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint. See Scheuer, 416 U.S. at 236. However, the court is "not to draw inferences from the complaint favorable to the plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). Rather, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).

As with 12(b)(1), when deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer, 416 U.S. at 236. See also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015) ("[T]he court must assume the factual allegations in the complaint to be true, 'even if [they are] doubtful in fact'. . . ." (citation omitted)). Although a complaint "does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal quotation marks omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a

complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

When interpreting the allegations in a pro se complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

"Nonetheless, a pro se complaint must state a plausible claim for relief". Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)).

Consistent with the liberal reading of a pro se plaintiff's complaint, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Walker, 717 F.3d at 122 n.1.

## III. DISCUSSION

### A. Counts I and II

Count I is a claim for violation of Title III of the ADA. "Title III of the ADA proscribes discrimination against the disabled in public accommodations. 'No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation.' [42 U.S.C.] § 12182(a)." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected, 511 F.3d 238 (2d Cir. 2004). Count II is claim for a violation of Section 504 of the Rehabilitation Act. "Enacted before the ADA, the focus of the Rehabilitation Act is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance. 29 U.S.C. § 794(a)

(2000). Section 504 states that '[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or activity." Id. (alteration in original).

"In order for a plaintiff to establish a prima facie violation under these Acts, she must demonstrate (1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y].'" Id. (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)) (alteration in original).

The plaintiff claims that Trinity Health discriminated against him because it "denied Plaintiff access to his prescribed mobility aids and safety equipment and instead provided only a small, non-prescribed walker and hospital socks." Amended Compl. ¶ 6.

In McGugan v. Aldana-Bernier, 752 F.3d 224 (2d Cir. 2014), the court analyzed what constitutes discrimination in the context of medical treatment. The court stated:

> The term "discrimination" is potentially confusing in the context of medical treatment. The

> word has two very different significations—one positive, the other pejorative. In its positive sense, one discriminates by drawing distinctions that are relevant to the qualities or characteristics of the thing observed. In its negative or pejorative sense, one discriminates by withholding advantages or inflicting disadvantages on the basis of irrelevant criteria, under the influence of irrational bias. A doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate) is practicing the benign form of discrimination. This is true even if the doctor's medical understanding is flawed and her knowledge is deficient. On the other hand, a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness—reasons dictated by bias rather than medical knowledge--is practicing the pejorative form of discrimination. It is clear that the intention of the Rehabilitation Act in prohibiting discrimination is to prohibit the pejorative, and not the benign, form. Thus a doctor may refuse to prescribe a particular treatment, which the disabled patient has requested, because of the doctor's assessment (based on an appraisal of the patient's medical condition) that the treatment would be harmful. The doctor's refusal is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed. Such a decision may be malpractice, but it is not discrimination. Section 504 does not authorize a claim for malpractice. See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.1996) (concluding that a similar provision of the Americans with Disabilities Act "does not create a remedy for medical malpractice").

Id. at 231-32.

The court then explained the distinction, in this context, between the benign form of discrimination and the pejorative form of discrimination, using as examples rulings in United States v. University Hospital, 729 F.2d 144 (2d Cir. 1984), and Greene v. City of New York, 465 F.3d 65, 78 (2d Cir. 2006). The

court stated:

> Thus in United States v. University Hospital, 729 F.2d 144 (2d Cir.1984), we denied relief and ruled that "section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." Id. at 156. Under this standard, a medical decision to administer (or to withhold) a treatment in the case of a disabled person could constitute discrimination that is actionable under Section 504 if the decision was motivated by considerations that are unrelated to proper medical decision-making about the case. But if the decision was taken in consideration of medically pertinent standards, it will not constitute actionable discrimination simply because the decision-maker unreasonably gave unwarranted significance to some pertinent factor. This result would still obtain, even if the decision was reprehensible and constituted malpractice.
>
> Our holding in Green v. City of New York, 465 F.3d 65, 78 (2d Cir. 2006), illustrates the other side of the coin from University Hospital. In Green, the plaintiff, who suffered from Lou Gehrig's disease, was forcibly hospitalized by the defendant medical personnel, in disregard of his objection. The plaintiff's physical paralysis, which disabled him from speaking, was irrelevant to his mental capacity to give or withhold consent to hospitalization. The defendants' decision to disregard the plaintiff's refusal, apparently based on an assumption having no basis in fact that Lou Gehrig's disease renders one incompetent to grant or withhold consent, was accordingly discriminatory in violation of Section 504. The ruling is entirely consistent with University Hospital, as the plaintiff's handicap was "unrelated to, and thus improper to consideration of" his competence to refuse hospitalization.

McGugan, 752 F.3d at 232.

Here, Chambers claims that the medical treatment he received was a non-prescribed walker and hospital socks instead

of the rollator or wheelchair, orthopedic footwear, and spinal brace. He has not alleged facts that could establish that the decision to do so was motivated by considerations that were unrelated to proper medical decision-making.

Therefore, the motion to dismiss is being granted as to Counts I and II.

**B. <u>Count III</u>**

Count III is a claim for a violation of the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." <u>McGugan</u>, 752 F.3d at 229. "A private entity acts under color of state law for purposes of § 1983 when (1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test'].'" <u>Id</u>. (internal citations omitted) (alterations in original). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." <u>Id</u>. (internal citations omitted).

In <u>McGugan</u>, the court held that the forcible medication and hospitalization of the plaintiff by private healthcare providers

could not fairly be attributed to the state. It explained:

> In Doe v. Rosenberg, 166 F.3d 507 (2d Cir.1999), we considered a substantially identical question. Adopting the reasoning given by the district court in that case, we held that private health care professionals and a private hospital did not engage in state action when they involuntarily committed Doe to the psychiatric ward of Columbia Presbyterian Medical Center. Id. at 508. The district court had analyzed each of the three tests for state action and found that none were satisfied. Doe v. Rosenberg, 996 F.Supp. 343, 351–55 (S.D.N.Y.1998).

McGugan, 752 F.3d at 229.

The first test for state action is whether the state compelled the defendant to "involuntarily hospitalize (and medicate) the plaintiff," as opposed to merely gave the defendant the authority to do so. Id. Here Trinity Health was not compelled to do so. Connecticut's involuntary hospitalization statute is Conn. Gen. Stat. § 17a-502(a), and while it gave Trinity Health the authority to involuntarily hospitalize Chambers, it did not compel it to do so. See Alicea v. Yang, No. 22-1482, 2023 WL 5994211 at *2 (2d Cir. Sept. 15, 2023) (summary order); Liv v. Connecticut, No. 3:22-cv-00996 (VAB), 2022 WL 3347220 at *17-18 (D. Conn. Aug. 11, 2022); Febres v. Yale-New Haven Hospital, No. 19-CV-1195 (KAD), 2019 WL 7050076 at *2 (D. Conn. Dec. 23, 2019); Chance v. Machado, No. 08 CV-774 (CSH), 2009 WL 3416422 at *2 (D. Conn. Oct. 22, 2009).

As to the second test, here as in McGugan and Rosenberg, "although [the defendant] operated in a highly regulated

context, the nexus between [the] challenged conduct and the state [is] insufficiently close for the conduct to qualify as state action." McGugan, 752 F.3d at 229. As to the third test, in McGugan, the court concluded that "if the conduct in Rosenberg was not traditionally within the exclusive prerogative of the state, we see no reason why the conduct here would be." Id. at 229-30. The same reasoning applies here.

Therefore, the motion to dismiss is being granted as to Count III.

**C. Counts IV, V, and VI**

The claims in these counts are state law claims: false imprisonment (Count IV), intentional infliction of emotional distress (Count V), and breach of contract (Count VI). Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." Because the court is dismissing each of the plaintiff's federal law claims, the court declines to exercise supplemental jurisdiction over his remaining state law claims.

## IV. CONCLUSION

For the reasons set forth above, the defendant's Motion to Dismiss (ECF No. 34) is hereby GRANTED.

Because the plaintiff has already been granted leave to

file an amended complaint, Counts I, II, and III are dismissed with prejudice. Because the court declines to exercise supplemental jurisdiction over the plaintiff’s state law claims, Counts IV, V, and VI are dismissed without prejudice.

It is so ordered.

Dated this 16th day of November 2026, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge